United States District Court
Southern District of Texas

**ENTERED**

January 11, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY  FERRARA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-182 |
| | § | |
| 4JLJ, LLC; dba J4 OILFIELD SERVICES, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Anthony Ferrara (Ferrara) filed this Fair Labor Standards Act (FLSA) case for unpaid overtime against his former employer, Defendant 4JLJ, LLC (4JLJ). Pending before the Court are competing motions for summary judgment on the issue of whether 4JLJ could properly treat Ferrara as an exempt employee, not entitled to the overtime protections offered by FLSA.  In Ferrara's motion, he seeks judgment that he was not exempt as a matter of law under the executive, administrative, highly compensated employee, professional, or Motor Carrier Act exemptions.  D.E. 21, 22.

In addition to defending against Ferrara's motion and objecting to his evidence, 4JLJ seeks judgment that Ferrara was exempt as a matter of law under the executive, administrative, and highly compensated employee exemptions.  While Ferrara has not yet filed his response to 4JLJ's motion, the Court considers the evidence attached to his motion regarding the same issues as responsive to 4JLJ's motion.

For the reasons set out below, Ferrara's motion for summary judgment (D.E. 21, 22) is GRANTED IN PART and DENIED IN PART.  4JLJ's motion to strike evidence and motion for summary judgment (D.E. 26 and 28) are DENIED.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251–52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id*.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (*per curiam*) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (*per curiam*) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated

and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (*per curiam*).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## DISCUSSION

Generally, whether an employee is exempt from the FLSA's overtime compensation provisions is a question of fact. *Lott v. Howard Wilson Chryler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). Whether established facts support an exemption is a question of law. *Id*. The employer bears the burden of proof to show that an

exemption applies to the complaining employee and that burden is by a preponderance of the evidence that the exemption is "plainly and unmistakably" applicable. *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). The statutory exemptions are further construed narrowly against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002). Job titles are not determinative. Rather, it is the employee's salary and primary duties that determine his or her qualification as an exempt employee. 29 C.F.R. §§ 541.2, 541.700(a).

## A. Exemptions at Issue

4JLJ has stated as an affirmative defense that "Plaintiff's claims are barred for all periods in which Plaintiff met the requirements of an exempt employee as set forth in the FLSA and the regulations issued thereunder by the Secretary of Labor." D.E. 15, p. 5, ¶ 27. Because of 4JLJ's lack of specificity in its pleading, Ferrara has addressed five potential exemptions, not knowing which exemption(s) 4JLJ intended to invoke.

In its own motion for summary judgment, 4JLJ seeks relief on only the executive, administrative, and highly compensated employee exemptions, without mention of any additional exemptions. The Court further notes that 4JLJ's response (D.E. 29), if read as a motion for leave to amend its pleading, fails to state any facts to proceed on the professional exemption under the federal pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Furthermore, 4JLJ's exclusive attention to Ferrara's primary duties as falling within the executive and administrative exemptions is inconsistent with any suggestion that those primary duties are instead those falling within the Motor Carrier Act exemption.

Consequently, the Court GRANTS IN PART Ferrara's motion and dismisses 4JLJ's claims, if any, that Ferrara was an exempt employee under the professional exemption and the Motor Carrier Act exemption.  Thus the Court need only address the executive, administrative, and highly compensated employee exemptions permitted by the FLSA's terms.

### B.  Objections to Summary Judgment Evidence

4JLJ has filed its Motion to Strike and Objections to Plaintiff's Motion for Summary Judgment (D.E. 26), complaining that portions of the Affidavits of Ferrara (D.E. 22-2/26-1) and Joshua Edwards (D.E. 22-3/26-2) contain inadmissible hearsay, conclusory statements, and matters outside of the respective affiants' personal knowledge.  After reviewing the affidavits and objections, and cognizant of principles of the admissibility of an opposing party's statements; matters that are trustworthy or corroborated; and cumulative evidence; and disregarding any portions that are inadmissible or unnecessary for the determination of the issues before the Court, the Court DENIES the motion to strike (D.E. 26), but relies only upon the evidence contributing to the following discussion of facts.

### C.  Factual Summary

4JLJ hired Ferrara as a Frac Supervisor at an annual salary of $100,000 plus discretionary bonuses on or about July 22, 2014.  D.E. 22-2, p. 9; D.E. 29-13.  His written contract of employment states that he was "subject to a trial employment period of 90 days."  D.E. 22-2, p. 9.  The contract says nothing about training, but that his medical insurance will have a "90 day waiting period."  *Id*.

Ferrara has testified, additionally, that for the "first couple of weeks" he watched videos in 4JLJ's main office in Robstown for the purpose of obtaining necessary certifications to perform the Frac Supervisor duties for 4JLJ's particular customers.  D.E. 22-2, p. 13.  He also testified that in the first 90 days, he was to stand back and observe and not issue any orders or make any decisions.  D.E. 22-4, p. 6.  In contrast, Rebekkah Clark, Vice President of 4JLJ and manager of human resources and payroll, testified that Ferrara was actually supervising all frac crew members immediately upon his hiring and the supervisory responsibilities only got divided out upon Travis Irelan's (Irelan's) hire on September 29, 2014.  D.E. 29-13.

Both Irelan and Colton Willis (Willis), 4JLJ's Frac Division General Manager and project engineer, testified that the Frac Supervisor job involved extensive managerial functions that Irelan and Ferrara shared in connection with supervising their respective crews.  D.E. 29-11, D.E. 29-12.  4JLJ advances evidence of the identity of Ferrara's specific crew members and shifts (D.E. 29-5, D.E. 29-6, D.E. 29-7), and shows that he actually trained Irelan as a Frac Supervisor, teaching him the systems that Ferrara had put in place to accomplish the supervisory actions required (D.E. 29-12).  4JLJ also issued to Ferrara a company laptop and a credit card, both of which were only issued to supervisory employees.  D.E. 29-13.

Ferrara testifies that, while his contract listed him as "Frac Supervisor," he actually only held the position of "Treater."  Willis testified that "Frac Supervisor" and "Treater" were synonymous terms for the person responsible for coordinating and executing all of the logistics of the job—as the highest ranking 4JLJ employee at the job

site.  D.E. 29-11.  Nonetheless, Ferrara testifies that, beginning with an incident in which he did not want a crew member's muddy boots messing up his company truck interior, 4JLJ did not permit him to perform the supervisory duties ordinarily associated with his position.  D.E. 22-2, p. 14; D.E. 22-3, p. 6.  His instruction to the muddy crew member was countermanded and his general authority was denied.  Ferrara contends that he operated under this non-supervisory position throughout his tenure at 4JLJ, enduring repeated undermining and having his duties usurped.

Ferrara states that all he did was sit in the data van, without access to the crew, and operated only under the instructions and oversight of the company man or the engineer, who made all operational decisions.  He spent less than 5% of his time on menial paperwork, such as scanning and emailing documents generated by others.  D.E. 22-2, pp. 15, 17; D.E. 22-3, p. 7.  He relayed other supervisory instructions to the personnel manager and line boss, who directly supervised the frac hands, such that he did not have managerial discretion and did not actually direct the work of others.  D.E. 22-3, p. 8.

Rather than supervise, manage, or administer, Ferrara contends that his primary job duties included a significant amount of manual labor in the field producing the product of the company.  D.E. 22-2, p. 20.  In particular, he refers to the labor-intensive responsibilities of rigging up and rigging down the various frac jobs he was assigned, as well as cleaning the data van, and helping fix and maintain equipment and trucks on a routine basis.  D.E. 22-2, p. 15.

In contrast, Irelan testified that Ferrara, as a frac supervisor, seldom, if ever, performed manual labor and instead directed others to do so.  D.E. 29-12.  Ferrara's own

resume also indicates that, while working for 4JLJ, he monitored product and chemical use, graphed the job, handled billing and well site safety, coordinated equipment and sand, set up formulas in the data van, and was in charge of coordinating chemicals and ordering.  D.E. 29-3.

With respect to crew supervision, Ferrara attests that he had no influence on hiring, firing, or disciplining other employees.  He points out that disciplinary records for two employees that 4JLJ contends were supervised by Ferrara were actually signed by Irelan as the immediate supervisor.  *E.g.,* D.E. 22-2, pp. 5-6.  Yet Ferrara handled a write-up on at least one of the crew members, Luis Moreno.  D.E. 29-7, pp. 14-16.

According to 4JLJ's records, Ferrara was discharged on February 3, 2015, for "Intentionally overpressuring a well without approval putting employees and equipment at risk."  D.E. 29-4.   4JLJ offers this as evidence that Ferrara did, in fact, exercise judgment and discretion, albeit in a manner not approved by the company in that particular instance.

### D. Probationary Period

Ferrara first claims that, for the initial 90 days of his employment, he was on probation and was merely a "trainee" and non-exempt as set out in 29 C.F.R. § 541.705. The FLSA training exception to exemption status reads:

> The executive, administrative, professional, outside sales and computer employee exemptions do not apply to employees training for employment in an executive, administrative, professional, outside sales or computer employee capacity *who are not actually performing the duties of an executive, administrative*, professional, outside sales or computer *employee*.

29 C.F.R. § 541.705 (emphasis added).  As noted above, while his status may have been probationary, there is some evidence that he was actually performing the job of a Frac Supervisor or Treater during all or part of the initial 90 days—that he was the only crew supervisor of eight crew members immediately upon being hired.  If, as Ferrara appears to argue, his probationary period meant that he was engaged in on-the-job training, that status is insufficient to defeat an exemption if he was otherwise "actually performing the duties."

The Court finds that there is a disputed issue of material fact regarding whether Ferrara was engaged in actually performing his duties within the probationary 90 days. Consequently, the Court rejects Ferrara's argument that his probationary status eliminates any exemption for that time period.  The Court DENIES IN PART Ferrara's motion for summary judgment (D.E. 21/22) to the extent that it seeks to eliminate any exemption during the probationary period as a matter of law.

### E. Executive Exemption

According to Department of Labor regulations implementing the FLSA, the executive exemption is defined as follows:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

> (3)   Who customarily and regularly directs the work of two or more other employees; and
>
> (4)   Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

While Ferrara concedes that his salary is sufficient to satisfy the first requirement, the evidence is disputed on the remaining factors. Under the standard of review, the Court does not weigh the evidence or determine credibility. Rather, the Court DENIES both summary judgment motions (D.E. 21/22, and 28) to the extent that they seek a judgment as a matter of law regarding the applicability of the executive exemption to Ferrara's work.

**F.  Administrative Exemption**

According to Department of Labor regulations implementing the FLSA, the administrative exemption is defined as follows:

> (a)   The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1)   Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2)   Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3)   Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

Again, Ferrara concedes the first requirement.   However, the evidence on the remaining factors is disputed as outlined above.   Again, the Court must DENY both motions for summary judgment (D.E. 21/22, and 28) regarding whether the administrative exemption applies as a matter of law.

**G. Highly Compensated Employee Exemption**

According to Department of Labor regulations implementing the FLSA, the highly compensated employee exemption is defined as follows:

> (a) An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part.

29 C.F.R. § 541.601.

Under this section, high compensation offsets some of the more detailed job duty considerations of the executive and administrative exemptions, such that, for example, supervision of at least two other employees may be sufficient to qualify for the exemption without the necessity of considering the other factors of that exemption.   29 C.F.R. § 541.601(c).   It is important, however, that the employee's primary duties be office-related or non-manual.   29 C.F.R. § 541.601(d).

The effect of the highly compensated employee exemption is to permit the application of the executive or administrative exemptions on a reduced evidentiary showing.  That does not mean, however, that the exemption may be applied in the face of disputed evidence, as is outlined above.  Thus, once again, the Court DENIES the motions for summary judgment (D.E. 21/22 and 28) with respect to the application of the highly compensated employee exemption as a matter of law.

## CONCLUSION

For the reasons set out above, the Court DENIES 4JLJ's motion to strike (D.E. 26).  The Court GRANTS IN PART Ferrara's motion for summary judgment (D.E. 21/22) with respect to the professional and Motor Carrier Act exemptions.  The Court DENIES IN PART the remainder of Ferrara's motion.  The Court DENIES 4JLJ's motion for summary judgment (D.E. 28) in its entirety.  The Court further DENIES 4JLJ's request for attorney fees made in its response (D.E. 29).

ORDERED this 11th day of January, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE