IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| ANTHONY FERRARA | § | |
|---|---|---|
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:15-cv-00182 |
| 4JLJ, LLC d/b/a J4 OILFIELD SERVICES | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT 4JLJ, LLC D/B/A J4 OILFIELD SERVICES'S REPLY IN SUPPORT OF ITS FIRST AMENDED
BENCH BRIEF ON THE ADMISSIBLITY OF EXCERPTS OF HUMBERTO MORALES'S DEPOSITION TRANSCRIPT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant 4JLJ, LLC d/b/a J4 Oilfield Services ("Defendant") respectfully files this its Reply in Support of its First Amended Bench Brief on the Admissibility of Excerpts of Humberto Morales's Deposition Transcript (the "Reply") and would respectfully show the Court as follows:

### I. ARGUMENTS & AUTHORITIES

Plaintiff's counsel are so caught up in finger pointing and hurling thinly veiled accusations that they left out any meaningful legal argument in their Response to Defendant's Bench Brief (the "Response"). Morales's testimony, though taken in a separate proceeding, is admissible at trial because Morales is unavailable under Rule 32 and Plaintiff's counsel had both the opportunity and the motive to question Morales during his deposition. As mentioned in Defendant's Bench Brief, Mr. Price did in fact question a different *Edwards* Plaintiff about Ferrara during re-examination—*the day before Morales's deposition*. Indeed, Mr. Price asked

questions *almost exclusively* about Anthony Ferrara. *See Exhibit B* to Defendant's First Amended Bench Brief.

### A. Plaintiff's Smear Campaign

Instead of arguing the legality of admitting Morales's deposition testimony, Plaintiff takes the stance that Defendant should be barred from using the testimony because Mr. Pipitone, an attorney who has practiced law for thirty-seven (37) years and at one time clerked for a federal judge, would undergo a heart catheterization[1] and put his reputation and credibility on the line in order to obtain discovery in this case. This could not be further from the truth.

In reality, Mr. Price, during Travis Irelan's May 6, 2016 deposition, was the first person to begin asking Ferrara-related questions in an *Edwards* deposition. *See Excerpts from Travis Irelan's Deposition*, attached hereto as *Exhibit A*, at 106:12–109:25. As Mr. Price noted, Irelan kept "talking about Anthony [Ferrara]" because he came up naturally in the course of questioning. *Id.* at 106:12–15. Contrary to Plaintiff's assertion in his Response, counsel for Defendant did not object when Mr. Price "asked who Anthony Ferrara was," and certainly did not instruct Mr. Irelan not to respond. *See id.*; *see also* Response, Dkt. No. 68, at 3 (making these false assertions). In fact, counsel for Defendant allowed Irelan to answer the question regarding who Ferrara is and only objected when Mr. Price began asking questions relating to the termination of Mr. Pinkard's employment—an issue that has absolutely no bearing on the *Edwards* case. *Exhibit A*, at 106:16–109:25.

### B. Questions About Morales Arose in the Normal Line of Questioning.

---

[1] After reviewing Plaintiff's Response filed late Thursday evening, Mr. Pipitone contacted the office of his cardiologist, Dr. Stuart Jacobson, early Friday morning in hopes of obtaining a "doctor's note" of sorts to put to rest these ludicrous accusations. Mr. Pipitone has been unable to procure the note on such short notice given the emergent nature of this issue. Mr. Pipitone will most certainly pursue obtaining this note if the Court deems it necessary.

In contrast, the questions Defendant's counsel asked during the *Edwards* depositions naturally led to obtaining information about Ferrara that Defendant previously did not know existed. Defendant had no reason to take the deposition of Humberto Morales in the *Ferrara* matter prior to his deposition in *Edwards* because Ferrara listed Morales in his Supplemental Disclosures as: "a former employee of Defendant [who] is aware of Plaintiffs [sic] on-site work duties and **lack of supervisory authority**." *See Plaintiff's First Supplement to Initial Disclosures*, attached hereto as *Exhibit B*, at 14 (emphasis added). Until Morales's *Edwards* deposition, counsel for Defendant had no reason to believe Morales would testify differently with regard to Ferrara until, during the normal course of questioning, he did:

> **Q Who were the other supervisors that worked for J4?**
> **A And everyone is trying to be a supervisor.**
> **Q Okay.**
> **A Everybody was. If they ran the job, they wanted to be a supervisor.**
> **Q Who were the individuals that ran the job?**
> **A Julio, Israel, Travis, Anthony, maybe a couple of other guy that I don't -- they were trying to train other guys to run jobs, be treaters, or run the pumps.**
> Q The guys that ran the job, the guys that you're referring to, those are treaters?
> A They would run the pump side, the pumps.
>
> . . . .
>
> Q And as you described earlier, the treater, he's the one that's running this whole show, correct?
> A Whether he's been training or not, yes, he's the one in charge at that specific moment, whoever is running the job, whoever is treating, he's in charge. He's in charge of the well.
>
> . . . .
>
> Q It says, "Identify, in detail, all communications between you and any third party referencing or relating to any named plaintiffs or opt-in plaintiffs, employment status, or time with defendants," and you state Anthony Ferrara?
> A Oh, Anthony, yeah.
> Q So you did speak with Anthony Ferrara this lawsuit?
> A Yeah.

> Q Okay. What was your communication with Anthony about this lawsuit?
> A It was such a long time. I don't even -- I don't remember.
> Q You don't recall? Is there a reason?
> A The conversation?
> Q Did you call him, did he call you?
> A I think he called me. I don't remember calling him, but I think he called me.
> Q You think he called you, but you don't know why he called you? Was he the person that -- Early, you testified that you heard of a lawsuit, but you don't know why?
> A No. It wasn't Anthony.
> Q Okay. But it wasn't Anthony?
> A Yeah. I would have remembered.
> **Q How did you know Anthony?**
> **A Well, he was my supervisor. He was a treater.**

*Excerpts from the Deposition of Humberto Morales*, attached hereto as *Exhibit C*, at 16:14–17:2; 18:25–20:8; 136:8–137:10 (emphasis added).

Moreover, despite Plaintiff's counsels assertions that the *Ferrara* and *Edwards* cases are "completely different," both cases involve analyzing the job duties and exemptions of *Edwards* plaintiffs who were treaters, just like Ferrara, or who worked for treaters, just like Ferrara. For example, there is evidence that **at least three (3) *Edwards* plaintiffs treated jobs, just like Ferrara**. *See Excerpts from Deposition Transcript of Juan Mares*, attached hereto as *Exhibit D*, at 17:14–18; 24:8–11; *Excerpts from Deposition Transcript of Francisco Gutierrez*, attached hereto as *Exhibit E*, at 63:12–17; *Excerpts from Deposition Transcript of Armando Garcia*, attached hereto as *Exhibit F*, at 112:14–113:4; *Exhibit C*, at 16:20–17:15. And, again contrary to Plaintiff's counsel's misleading and completely unfounded remarks, Defendant *has* asserted the executive, administrative, and professional exemptions in the *Edwards* case—not just the Motor Carrier Act Exemption. *See* Defendant's Amended Answer to Plaintiffs' First Amended Complaint, Dkt. No. 79, at ¶27(m); *see also* Response, Dkt. No. 68, at 3 (falsely stating that "[t]he only exemption Defendants are claiming in the Edwards case is the Motor Carrier Act

exemption"). Plaintiff's counsel made the decision to file two (2) separate lawsuits against the same company. It cannot now expect that simply because the discovery deadline had passed in *Ferrara*, counsel for Defendant would be foreclosed from questioning *Edwards* plaintiffs about their job duties, general hierarchy, and the roles they and their co-workers held.

### C. Plaintiff Misrepresents Magistrate Judge Ellington's Statements at the Discovery Hearing.

Plaintiff's last misrepresentation may be the most bold. Plaintiff states that during the telephone hearing conducted during Juan Mares's deposition,[2] "Judge Ellington made the comment that there was no harm since the depositions in the Edwards case could not be used in the Ferrara case." Response, Dkt. No. 68, at 8. Plaintiff then goes on to tell this Court that "to allow admissions of Edwards depositions in the Ferrara case would be in contravention of Judge Ellington's statements made during the discovery hearing." *Id.* at 9. This is yet another unfortunate example of Plaintiff stretching the truth to fit his agenda. Magistrate Judge Ellington made no such comment during the telephone hearing. Even if she had, a throwaway comment during a hearing—not a ruling—but a comment, would have no legal bearing on this Court's decision now, faced with Morales's and his counsel's unwillingness to present him at trial, on whether to admit Morales's testimony. Instead, Magistrate Judge Ellington indicated that the admissibility of the deposition transcripts was an issue best resolved at a later date.

Not all litigation must be so acrimonious. Here, it seems the only explanation for such hostility, vile accusations, and repeated misrepresentations is that Plaintiff's counsel is nervous about the testimony Humberto Morales will offer. But the true purpose of discovery and of the

---

[2] It should be noted that, though Plaintiffs spend roughly four (4) pages quoting Juan Mares's deposition, Defendant does not seek to introduce Mares's deposition testimony, rather it seeks to present Morales's testimony, quoted in substantial portion herein.

entire judicial process is to uncover the truth in search of justice, not to obviate it. Thus, Morales's deposition testimony should be admitted in this case.

## II. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendant 4JLJ, LLC d/b/a J4 Oilfield Services respectfully requests that this Honorable Court accept, review, and consider its Reply in Support of its First Amended Trial Brief on the Admissibility of Excerpts of Humberto Morales's Deposition Transcript.

Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Daniel D. Pipitone*
    Daniel D. Pipitone
    Texas Bar No. 16024600
    700 Milam Street, Suite 2700
    Houston, Texas 77002
    Tel: 713-222-4060
    Fax: 713-222-5813
    dpipitone@munsch.com

**ATTORNEY IN CHARGE FOR DEFENDANT**

**OF COUNSEL:**

**Munsch Hart Kopf & Harr**
700 Milam Street, Suite 2700
Houston, Texas 77002

**Michael A. Harvey**
Texas Bar No. 24058352
SD Texas Bar No. 917759
700 Milam Street, Suite 2700
Houston, Texas 77002
Tel: (713) 222-4015
Fax: (713) 222-5835
mharvey@munsch.com

**Brenna L. Hill**
Texas Bar No. 24058352
SD Texas Bar No. 917759

700 Milam Street, Suite 2700
Houston, Texas 77002
Tel: (713) 222-4068
Fax: (713) 222-1475
bhill@munsch.com

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the above and foregoing document has been sent to counsel of record by means of ECF this 16th day of September, 2016:

James Moulton
MOULTON & PRICE, P.C.
109 SH 110 South
Whitehouse, Texas 75791
**ATTORNEY FOR PLAINTIFF**

                              */s/ Daniel D. Pipitone*
                              Daniel D. Pipitone

MHDocs 7140128_1 16239.3